## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEER BEARING COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Miscellaneous Case No. _____** |
| **v.** | ) | |
| | ) | **Case No. 91171191** |
| **ROLLER BEARING COMPANY OF** | ) | |
| **AMERICA, INC.,** | ) | **Pending in the Trademark Trial and** |
| | ) | **Appeal Board** |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

**AND NOW**, this ___ day of _____, 2012, upon consideration of Motion to Quash Subpoenas Served on Pepper Hamilton LLP, David Richman, Esq., and Matthew D. Janssen, Esq. and for Sanctions, and any responses and replies thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED**.  The subpoenas *duces tecum* and *ad testificandum* that Roller Bearing Company of America, Inc. ("RBC") served on Pepper Hamilton LLP, David Richman, Esq., and Matthew D. Janssen, Esq. are **QUASHED**, and the subpoenaed non-parties are hereby relieved of their obligation to comply with the subpoenas. Further, RBC and its counsel at the Michaud-Kinney Group LLP are hereby **SANCTIONED** and shall reimburse Pepper Hamilton LLP, David Richman, Esq., and Matthew D. Janssen, Esq. for the attorneys' fees and costs that they incurred in moving to quash the subpoenas.  Within five days from the date of this Order, Pepper Hamilton LLP, David Richman, Esq., and Matthew D. Janssen, Esq. shall file with the Court a notice setting forth the attorneys' fees and costs that

they incurred in moving to quash the subpoenas, and RBC and/or its counsel, within five days of

the date of that notice, shall reimburse them for the amount set forth in the notice.

BY THE COURT:

_____
, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PEER BEARING COMPANY,                    )
                                         )
            Plaintiff,                   )
                                         )    Miscellaneous Case No. _____
      v.                                 )
                                         )    Case No. 91171191
ROLLER BEARING COMPANY OF                )
AMERICA, INC.,                           )    Pending in the Trademark Trial and
                                         )    Appeal Board
            Defendant.                   )
                                         )

MOTION TO QUASH SUBPOENAS SERVED ON
PEPPER HAMILTON LLP, DAVID RICHMAN, ESQ., AND
MATTHEW D. JANSSEN, ESQ. AND FOR SANCTIONS

Pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, Pepper Hamilton

LLP, David Richman, Esq., and Matthew D. Janssen, Esq., by and through undersigned counsel,

hereby move the Court to (1) quash the subpoenas that Roller Bearing Company of America, Inc.

("RBC") served on them and (2) sanction RBC and its counsel for wholly failing to avoid

imposition of undue burden and expense on the subpoenaed non-parties.  The grounds supporting

this Motion are fully set forth in the accompanying Memorandum of Law.

Respectfully submitted,

Dated:  August 24, 2012              /s/ Matthew D. Janssen
                                     David Richman
                                     Matthew D. Janssen
                                     PEPPER HAMILTON LLP
                                     3000 Two Logan Square
                                     Eighteenth and Arch Streets
                                     Philadelphia, PA 19103-2799

                                     Counsel for Pepper Hamilton LLP,
                                     David Richman, and Matthew D. Janssen

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PEER BEARING COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Miscellaneous Case No. _____** |
| **v.** | ) | |
| | ) | **Case No. 91171191** |
| **ROLLER BEARING COMPANY OF** | ) | |
| **AMERICA, INC.,** | ) | **Pending in the Trademark Trial and** |
| | ) | **Appeal Board** |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH
SUBPOENAS SERVED ON PEPPER HAMILTON LLP, DAVID RICHMAN, ESQ., AND
MATTHEW D. JANSSEN, ESQ. AND FOR SANCTIONS**

David Richman
Matthew D. Janssen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel. 215.981.4000
Fax 215.981.4750

Dated:  August 24, 2012

*Counsel for Pepper Hamilton LLP,*
*David Richman, and Matthew D. Janssen*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................2

    A.   RBC's acquisition of the Nice business from SKF and use of Series terms. ......... 2

    B.   Deterioration of the business relationship RBC and SKF and RBC's parallel lawsuits against SKF. ................................................................................. 3

    C.   RBC's attempts to arrogate trademark rights in Series terms and opposition to same by SKF and Peer. ................................................................... 4

    D.   RBC institutes arbitration proceedings in an effort to enjoin SKF and Peer's TTAB opposition proceedings. .................................................................. 5

        1.   Phase 1 of the Arbitration – RBC's request for an order enjoining SKF's TTAB opposition proceedings........................................................ 6

        2.   Phase 2 of the Arbitration – RBC's request for an order enjoining SKF to restrain Peer's TTAB opposition proceedings. ............................. 8

    E.   RBC's issuance of subpoenas to Pepper Hamilton and attorneys Richman and Janssen in the *Peer v. RBC* TTAB opposition proceedings. ........................... 9

III.  ARGUMENT .........................................................................................................13

    A.   This Court should quash RBC's subpoenas to the extent that they require deposition testimony. .......................................................................................... 15

        1.   The subpoena *ad testificandum* to Pepper Hamilton is defective in that it fails to set forth topics of inquiry.................................................... 15

        2.   RBC's subpoenas requesting deposition testimony from attorneys Richman and Janssen should be quashed since the attorneys are currently representing SKF in litigations against RBC.............................. 15

    B.   This Court should quash RBC's subpoenas to the extent that they require production of documents........................................................................................ 19

        1.   Request 1 of RBC's subpoenas seeks duplicative production and privileged documents, including documents that the Panel has already held are privileged and not subject to production. ....................... 20

        2.   RBC's subpoenas will impose an undue burden since Requests 6-9 are completely unbounded in scope........................................................ 22

Page

3.    RBC's subpoenas impose an undue burden since Requests 2-4 and
      10 require reproduction of documents in RBC's possession. ................... 23

4.    Requests 5, 11, and 12 of RBC's subpoenas seek documents that
      are wholly irrelevant to the Peer v. RBC TTAB proceedings. ................ 26

C.    This Court should sanction RBC and its counsel for seeking to harass
      Pepper Hamilton and its attorneys through the issuance of unduly
      burdensome and wholly unnecessary subpoenas. ................................................ 27

IV.   CONCLUSION ............................................................................................................ 28

## I.     INTRODUCTION

Roller Bearing Company of America, Inc. ("RBC") has issued subpoenas *ad testificandum* and *duces tecum* to attorneys David Richman and Matthew D. Janssen and their law firm, Pepper Hamilton LLP, in connection with the above-captioned Trademark Trial and Appeal Board ("TTAB") opposition proceedings pending between RBC and Peer Bearing Company ("Peer"), a subsidiary of Pepper Hamilton client SKF USA Inc. ("SKF").  Since the TTAB proceedings have been suspended at RBC's request, the subpoenas violate the TTAB stay; since RBC has filed a case-dispositive motion, even if the underlying proceedings were not suspended, RBC has no current need for the discovery in question, which could be mooted by a TTAB ruling granting RBC's motion.

Aside from the status of the TTAB proceedings, which warrants quashing the subpoenas, the subpoenas should be quashed because the information and documents they seek are either:  (a) protected by the attorney-client privilege, the community-of-interest privilege, or the work-product doctrine; (b) were previously disclosed or produced in an arbitration between RBC and SKF; or (c) are irrelevant to the matters at issue in the TTAB proceedings.

Judged on the basis of the information and documents sought by the subpoenas, it is inferable that the subpoenas have been issued for the improper purposes of relitigating issues that have been decided against RBC and of harassing and annoying SKF and its attorneys Richman and Janssen and their law firm Pepper Hamilton.[1]  RBC and SKF have been embroiled in a series of lawsuits for more than six years, a number of which are still pending.  Most recently, SKF, represented by Richman and Janssen, defeated RBC's application in an arbitration

---

[1] RBC also issued a subpoena to SKF that it served on Richman as SKF's attorney.  Richman returned the subpoena to RBC's counsel with the advice that he was not authorized to accept service.  To movants' knowledge, the subpoena has not been served properly on SKF.

proceeding for an injunction barring SKF's subsidiary Peer from opposing RBC's trademark

registration applications before the TTAB. The subpoenas at issue seek testimony and

documents for use in those opposition proceedings to dispute anew the right of Peer or its

lawyers to contest RBC's registration efforts. But the testimony and documents sought by the

subpoenas were, to an overwhelming extent, either produced in the arbitration or judged by the

arbitration panel to be protected from production by the common-interest privilege. As the

subpoenas lack a reasonable justification and are abusive, RBC and its counsel have violated

Rule 45(c)'s proscription of subpoenas that impose undue burden and expense on the persons

subject to them, and they must be sanctioned for the violation.

## II.     FACTUAL BACKGROUND

### A.     RBC's acquisition of the Nice business from SKF and use of Series terms.

RBC and SKF are both in the business of manufacturing and distributing ball

bearing products. In 1997, RBC and SKF entered into an Asset Purchase Agreement (the "1997

APA") by which RBC purchased from SKF the Nice ball bearing business, which manufactures

Nice-branded inch-dimension ball bearings. *See* Excerpts of 1997 APA, attached as Exhibit A.

The parties contemporaneously entered into a long-term sales and supply agreement by which

RBC named SKF as its exclusive distributor for Nice bearing products.

Since its inception in 1902, Nice has used a "Series" system to organize its

various lines of bearings in its marketing materials and bearing catalogues. *See* Excerpt from

Sample Nice Product Catalogue, attached as Exhibit B. Nice classifies its Series by number –

e.g., the "1600 Series," the "3000 Series," etc. Nice's use of these Series terms is not unique and

never has been. Indeed, throughout SKF and RBC's ownership of the Nice business, competing

bearing manufacturers, including Peer, Pacamor Bearings, and SST Bearing, have used the same

Series designations that Nice uses to designate bearings that correspond in type and size to Nice

bearings.  *See* Excerpts from Nice's Competitors' Catalogues, attached as Exhibit C.  Since use

of the Series terms is standard in the bearing industry, the terms are incapable of serving as

trademarks – i.e., indicators that a bearing comes from a single source.[2]

**B.      Deterioration of the business relationship RBC and SKF and RBC's parallel
          lawsuits against SKF.**

By the Summer of 2005, RBC management had decided that it could increase the

profitability of the Nice product line by selling the bearings directly to the market covered by

SKF's exclusive distributorship and avoiding the expense of a middleman.  Instead of

negotiating an early end to SKF's exclusive distributorship, RBC terminated it and sued SKF in

both state and federal court for breach of the parties' 2000 sales and supply agreement.[3]  The

federal lawsuit also included claims that SKF infringed RBC's Nice-related intellectual property,

including common law trademark rights that RBC claimed to have in Series terms.  RBC sought

to recover from SKF more than $7 million in damages in its parallel lawsuits.  SKF, having lost

approximately $500,000 in profits as a result of RBC terminating the sales and supply

agreement, asserted counterclaims against RBC.  Attorneys Richman and Janssen of Pepper

Hamilton represented SKF in both cases.

Following a trial of the state court action, which absolved SKF of any breach of

contract, judgment entered in SKF's favor on RBC's claims and in RBC's favor on SKF's

counterclaims in both cases.  *See generally RBC Nice Bearings, Inc. et al. v. SKF USA Inc.*, No.

X03CV065009720S, 2010 Conn. Super. LEXIS 3429 (Conn. Super. Ct. July 23, 2010); *RBC*

---

[2] *See generally* 15 U.S.C. § 1127 (defining "trademark" as any word, name, or symbol used by a person "to
identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and
to indicate the source of the goods").

[3] In 2000, RBC and SKF entered into a sales and supply agreement regarding Nice bearing products that
amended and superseded the sales and supply agreement that they entered into in 1997.  It was the terms of the 2000
agreement on which RBC founded its breach of contract claims against SKF.

*Nice Bearings, Inc. et al. v. SKF USA Inc.*, No. 3:06-CV-1880, 2011 U.S. Dist. LEXIS 18183 (D.

Conn. Feb. 24, 2011); *RBC Nice Bearings, Inc. et al. v. SKF USA Inc.*, No. 3:06-CV-1880, 2011

U.S. Dist. LEXIS 141801 (D. Conn. Dec. 9, 2011). The Connecticut state court case is currently

on appeal in the Connecticut Appellate Court (case number AC32606). Attorneys Richman and

Janssen represent SKF in that appeal.

      **C.**    **RBC's attempts to arrogate trademark rights in Series terms and opposition to same by SKF and Peer.**

      Around the time that RBC sought to eliminate SKF as its exclusive Nice bearing

distributor, RBC also decided to seek federally registered trademarks in the Series terms to gain

an advantage over Nice's competitors who use the same terms in their marketing materials. In

2004 and 2005, RBC applied to the United States Patent and Trademark Office ("USPTO") for

registration of the following Series terms as trademarks – "400 Series," "500 Series," "600

Series," "1600 Series," "3000 Series," "5000 Series," "6900 Series," "7500 Series," and "7600

Series." The USPTO then published the marks in the "Official Gazette" so that persons who

might be damaged by registration – i.e., other users of the marks – could oppose RBC's

applications.

      The USPTO's publication of the Series marks prompted opposition from

members of the bearing industry. Since 2006, a half-dozen bearing manufacturers and

distributors have instituted multiple proceedings with the Trademark Trial and Appeal Board

("TTAB") to prevent RBC from obtaining trademark rights in Series terms. In April 2007, SKF,

represented by Richman and others from the Pepper Hamilton firm, filed Notices of Opposition

against RBC's applications relating to the 400, 500, 600, 3000, 5000, 6900, 7500, and 7600

Series terms. Peer likewise instituted opposition proceedings against RBC's applications to

register these terms as trademarks, and also filed a Notice of Opposition against RBC's

application relating to the 1600 Series term.  Another bearing company, NTN, opposed RBC's

application to register the term 400 Series.  Each of the opposers asserted various grounds for

opposing RBC's applications, including the fact that extensive use of Series terms throughout the

bearing industry prevents the terms from serving as trademarks.

        All opposers besides SKF, Peer, and NTN eventually withdrew their oppositions

upon entering into private settlement agreements with RBC.  But, with SKF, Peer, and NTN's

oppositions pending, RBC was prevented from obtaining the registered trademarks that it would

have obtained automatically in the absence of oppositions.

### D. RBC institutes arbitration proceedings in an effort to enjoin SKF and Peer's TTAB opposition proceedings.

        In September 2009, RBC instituted another lawsuit against SKF, an arbitration

captioned *RBC Nice Bearings, Inc., et al. v. SKF USA Inc.*, Case No. 14 152 01622 09

(American Arbitration Association) (the "Arbitration").  Richman and Janssen represented SKF

in that case.[4]

        By the Arbitration, RBC sought, among other things, an order enjoining SKF to

terminate the opposition proceedings that SKF instituted in the TTAB.  RBC claimed that since

SKF, by the 1997 APA, transferred to RBC "all product designations used in [SKF's] catalog

with respect to [Nice] Products," SKF divested itself of all rights it had in Nice product

designations, including Series terms, and that SKF was therefore prohibited by the provisions of

the 1997 APA and its implied obligation of good faith and fair dealing from opposing RBC's

efforts to register Series terms as trademarks.  RBC further alleged that since SKF acquired Peer

---

      [4] The arbitration panel consisted of three retired appellate judges:  (1) the Honorable Arlin M. Adams, formerly of the United States Court of Appeals for the Third Circuit, (2) the Honorable George C. Pratt, formerly of the United States Court of Appeals for the Second Circuit, and (3) the Honorable E. Norman Veasey, former Chief Justice of the Delaware Supreme Court (collectively, the "Panel").

as a wholly-owned subsidiary in September 2008, SKF, through its control and ownership of

Peer, was required to impose its contractual restraints on Peer and extinguish Peer's oppositions

to RBC's trademark applications and use of Series terms used by Nice.[5]

      The Arbitration proceeded in two phases.  The first, for which there was an

evidentiary hearing in November 2010, related to the issue of whether SKF should be enjoined

from opposing RBC's trademark applications.  The second, for which there was an evidentiary

hearing in September 2011, related to the issue of whether Peer should be similarly enjoined.

1.      **Phase 1 of the Arbitration – RBC's request for an order enjoining SKF's TTAB opposition proceedings.**

      Prior to the November 2010 hearing, RBC engaged in extensive discovery with

SKF.  Among other things, RBC sought communications between SKF/SKF's counsel and

Peer/Peer's counsel relating to Peer's TTAB opposition proceedings and other RBC/Peer and

RBC/SKF litigations.[6]  *See* Letter dated October 29, 2009 at Requests 2-4, attached as Exhibit D.

On September 17, 2010, SKF produced to RBC non-privileged documents responsive to RBC's

requests.  But, since SKF and Peer had a "community-of-interest" relating to the pending TTAB

proceedings and other litigations in that they both had an identical legal interest in defeating

RBC's claim of trademark rights in Series terms, and since SKF, Peer, and their attorneys shared

confidential legal advice, attorney-client communications, and work product within that

community-of-interest, SKF withheld from its production 142 responsive documents "protected

---

[5] Three years before it instituted the Arbitration, RBC sought an injunction restraining Peer's use of Series terms in a federal lawsuit captioned *RBC Nice Bearings, Inc. v. Peer Bearing Company*, No. 06-cv-1380 (D. Conn.). RBC founded its request for an injunction in that lawsuit on its claim that Peer's use of Series terms infringed common law trademark rights that RBC allegedly had in those terms.  The district court entered judgment in Peer's favor and against RBC on each of RBC's trademark infringement claims and the Second Circuit affirmed the district court's judgment on appeal.  *See RBC Nice Bearings, Inc. v. Peer Bearing Company*, 410 Fed. Appx. 362 (2d Cir. 2010).  The *RBC v. Peer* lawsuit was another element of RBC's campaign to obtain exclusive trademark rights in Series terms and, consequently, a competitive advantage over manufacturers of inch-dimension bearings.

[6] Thomas C. McDonough and others from the Chicago law firm of Neal, Gerber & Eisenberg LLP represent Peer in its litigations with RBC.

from disclosure by the attorney-client privilege, the common-interest or community-of-interest privilege, and/or the work product doctrine."[7]  Letter dated September 17, 2010, attached as Exhibit E.

On November 3, 2010, RBC moved the Panel for an order compelling SKF to produce the 142 communications withheld by SKF.  *See* Letter dated November 3, 2010, attached as Exhibit F.  SKF opposed RBC's motion, and following an *in camera* review of the documents and oral argument on RBC's motion, the Panel granted RBC's motion in part and denied it in part.  *See* N.T. (11/23/2010) at 228-236, attached as Exhibit G.  The Panel held that a number of the documents contained on the privilege log, including, for example, emails regarding scheduling, were unimportant and not subject to production.  *See id.*  The Panel further held that the common-interest privilege applied to "a large group of [] communications [] between counsel for Peer and counsel for SKF, which involved strategy as to how to oppose RBC."  *Id.*  As to those documents, the Panel held that SKF did not need to produce them.  *See id.*  But, the Panel identified two relevant documents that were sent to parties outside the SKF/Peer community-of-interest and held that those documents were subject to production since they were disclosed to third parties.  *See id.*  SKF produced those two documents to RBC in accordance with the Panel's ruling.  *See id.*

---

[7] The common-interest or community-of-interest privilege is not an independent privilege that protects communications from disclosure.  Rather, the community-of-interest privilege expands the protections of the attorney-client privilege and the work product doctrine by allowing counsel for different clients with congruent legal interests to share confidential attorney-client communications and coordinate legal strategies without having to disclose the communications to others.  *See generally In re: Teleglobe Comms. Corp.*, 493 F.3d 345, 364-65 (3d Cir. 2007) (noting that "the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others"); *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (noting that the community-of-interest privilege is "an extension of the attorney client privilege" in that it "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel").  Further, the privilege protects from disclosure confidential legal communications between a corporate parent and its subsidiaries since such companies share a "complete community of interest." *The Glidden Company v. Jandernoa*, 173 F.R.D. 459, 472-73 (W.D. Mich. 1997).

Following the two-day hearing for the first phase of the Arbitration, the Panel, on March 25, 2011, issued its Interim Award and Order by which it granted RBC's request for an order requiring SKF to withdraw its TTAB opposition proceedings. *See* Interim Award and Order, attached as Exhibit H.  The Panel found that "RBC acquired through the [1997] APA all of SKF's interest in the product designations . . . ." *Id.*  Accordingly, "as a party with no interest in the trademark proceedings, SKF's filing of oppositions to RBC's trademark applications [was] without any sound justification." *Id.*  When the Panel's Interim Award and Order became final, SKF withdrew its TTAB opposition proceedings.

### 2.   Phase 2 of the Arbitration – RBC's request for an order enjoining SKF to restrain Peer's TTAB opposition proceedings.

Since, at the first hearing, the Panel was not "provided with evidence that would warrant sanctioning SKF for its control of Peer after it became Peer's parent," the Panel held the record open "for the purpose of receiving further evidence and argument from both sides on the issue of whether SKF's relationship to Peer is such as to warrant further relief against SKF based on Peer's conduct toward RBC." *Id.*  Accordingly, the second phase of the Arbitration concerned a single issue – whether SKF's control over Peer rendered Peer SKF's alter ego such that the corporate veil between SKF and Peer could be pierced and the Panel's order restraining SKF from pursuing TTAB oppositions extended to Peer. *See id.*; *see also* Final Award and Order at 12, 21-22 attached as Exhibit I (noting that "this Panel is called upon to decide" whether "Peer is SKF's alter ego").

Prior to the second hearing, RBC propounded another set of extensive discovery requests to SKF regarding the corporate relationship between SKF and Peer and the control that SKF exercises over Peer as its wholly-owned subsidiary.  RBC's discovery requests included (1) forty-two interrogatories, (2) twenty-two document demands, and (3) seventeen requests for

-8-

admission.  *See* SKF's Objections and Responses to RBC's Supplemental Discovery Requests,
attached as Exhibit J.  SKF responded to that discovery on July 15, 2011, and made a
supplemental production in response to an order from the Panel in August 2011.

On September 7-8, 2011, the parties had the hearing for phase two of the
Arbitration, and on April 4, 2012, a majority of the Panel issued the Final Award and Order,
finding that there was "no evidence whatsoever that SKF has operated or now operates Peer as
an 'alter ego.'"  *Id.* at 14, 21-22.  Accordingly, the Panel denied RBC's request for an order
enjoining SKF to require Peer to extinguish its TTAB opposition proceedings.  By freeing Peer
to pursue TTAB oppositions to RBC's trademark applications that SKF previously opposed, the
Panel effectively denied RBC the relief it sought by the Arbitration – i.e., elimination of TTAB
oppositions which would permit automatic registration of Series terms as trademarks.[8]

**E.      RBC's issuance of subpoenas to Pepper Hamilton and attorneys Richman
         and Janssen in the *Peer v. RBC* TTAB opposition proceedings.**

During the pendency of the Arbitration, the TTAB suspended all opposition
proceedings relating to RBC's applications to register Series terms as trademarks.  Following
conclusion of the Arbitration, Peer petitioned the TTAB to lift the suspension, but RBC opposed
resumption and asked that the suspension remain in place.  RBC also submitted papers that the
TTAB "construed as a motion for summary judgment on the ground that the arbitration award
bars [Peer] from bringing its claims," despite the fact that the Final Award, by its plain terms,
frees Peer to pursue its TTAB oppositions.  *See* Order dated July 5, 2012, attached as Exhibit K.
On July 24, 2012, RBC affirmatively moved the TTAB to continue the suspension (Motion for
Suspension, attached as Exhibit L), and on July 26, 2012, the TTAB granted RBC's motion.  *See*
Order dated July 26, 2012, attached as Exhibit M.

---

[8] The Panel's Final Order also dismissed RBC's claim for damages.

While the Peer TTAB opposition proceedings are suspended, RBC is foreclosed from taking discovery regarding issues relating to Peer's oppositions.[9]  Nevertheless, in complete disregard of the rules, RBC, in August 2012, issued subpoenas to Pepper Hamilton and attorneys Richman and Janssen which requested that they produce on August 24, 2012, myriad documents relating to, *inter alia*, the Arbitration, communications between SKF and Peer that the Panel held are privileged and protected from disclosure, and discovery previously produced in the Arbitration, including documents relating to SKF's control over Peer.  *See* Subpoenas, attached as Exhibit N.  RBC's requests for such documents suggest that it plans on relitigating in the TTAB the alter ego issues that were previously litigated and decided against RBC in the Arbitration, or that RBC, following defeat by SKF in various litigation matters, merely wants to annoy and harass SKF's counsel by requiring them to respond to discovery requests that largely duplicate those to which SKF previously responded in the Arbitration.  The subpoenas further requested that Pepper Hamilton and attorneys Richman and Janssen appear for deposition on August 29, 2012.  The deposition subpoena to Pepper Hamilton, a Pennsylvania limited liability partnership, did not set forth any matters for examination as required by Rule 30(b)(6) of the Federal Rules of Civil Procedure.[10]

The document demands set forth in the subpoenas to Pepper Hamilton and attorneys Richman and Janssen vary slightly from subpoena to subpoena, but essentially call for the production of:

> (1)  "All correspondence between [SKF, Pepper Hamilton, Attorney Richman, or Attorney Janssen] and any person acting for

---

[9] *See* Trademark Trial and Appeal Board Manual of Procedure § 403.01 (3d ed., Revision 1, June 2012) ("The traditional discovery devices, namely, discovery depositions, interrogatories, requests for production of documents and things, and requests for admission, are available for use only during the discovery period.").

[10] *See* Fed. R. Civ. P. 30(b)(6) ("In its notice or subpoena, a party may name as a deponent a [] corporation [or] partnership [and] must describe with reasonable particularity the matters for examination.").

on behalf of or for the benefit of Peer, regarding any of Peer's Consolidated Oppositions and/or any opposition pending at any time before the USPTO or litigation matter involving the Applicant."

(2) "All documents relating to any claim or waiver of common interest privilege associated with or related to documents shared between [SKF, Pepper Hamilton, Attorney Richman, or Attorney Janssen] and Peer or communications between [SKF, Pepper Hamilton, Attorney Richman, or Attorney Janssen] and Peer, in the Arbitration or any civil litigation matter and/or any opposition pending at any time before the USPTO involving the Applicant, including but not limited to transcripts of hearings before the Arbitration panel Judges and any orders or decisions issued thereby."

(3) "All documents relating to any claim or waiver of privilege associated with or related to documents shared between [SKF, Pepper Hamilton, Attorney Richman, or Attorney Janssen] and Peer or communications between [SKF, Pepper Hamilton, Attorney Richman, or Attorney Janssen] and Peer, in the Arbitration, any civil litigation matter or any opposition pending at any time before the U.S. PTO involving the Applicant, including but not limited to transcripts of hearings before the Arbitration panel Judges and any orders or decisions issued thereby."

(4) "All documents relating to SKF's control and ownership of Peer, including but not limited to documents relating to Peer's activities and SKF's control and ownership of Peer and/or policies applicable to Peer as an operating business of or subsidiary of SKF or as a member of the SKF group of companies."

(5) "All documents relating to engagement of, review, approval or payments to Pepper Hamilton for SKF's legal expenses associated with the Arbitration, Peer's Consolidated Oppositions or any opposition pending at any time before the USPTO involving the Applicant."

(6) "All documents, including all correspondence between Peer or NGE and [SKF, Pepper Hamilton, or Attorney Richman] on or after April 4, 2012, including but not limited to documents and correspondence between [Pepper Hamilton or Attorney Richman] and attorneys Thomas C. McDonough and Thomas E. Williams, and their law firm Neal, Gerber & Eisenberg, LLP ("NGE")."

(7) "All documents, including all correspondence between Peer or NGE and [SKF, Pepper Hamilton, or Attorney Richman] before

April 4, 2012, including but not limited to documents and
correspondence between [SKF, Pepper Hamilton, or Attorney
Richman] and attorneys Thomas C. McDonough and Thomas E.
Williams, and their law firm Neal, Gerber & Eisenberg, LLP."

(8) "All documents, including all correspondence between Peer
and [SKF, Pepper Hamilton, or Attorney Richman] on or after
April 4, 2012."

(9) "All documents, including all correspondence between Peer
and [SKF, Pepper Hamilton, or Attorney Richman] before April 4,
2012."

(10) "All documents relating to the Arbitration, including but not
limited to documents relating to hearing transcripts, e-mails,
discovery, Arbitration Panel Orders and communicators [sic] with
the Arbitration Panel or any Arbitration Judge."

(11) "All documents relating to engagement of, review, approval
or payment for legal services rendered by NGE [or Pepper
Hamilton] for Peer including but not limited to invoices and
documents relating to payment for the legal services."

(12) "All documents relating to any Pepper Hamilton policy
concerning a conflict of interest and waivers thereof in the
representation of clients."

Subpoenas, attached as Exhibits N.[11]

On August 20, 2012, undersigned counsel served on John H. Mutchler, Esq.,
counsel for RBC who issued the subpoenas, objections to the subpoenas *duces tecum. See*
Objections dated August 20, 2012, attached as Exhibit O. The objections placed Mr. Mutchler
on notice that the subpoenas exposed RBC and its counsel to monetary sanctions since RBC
wholly failed to take any steps to avoid imposing undue burden and expense upon the
subpoenaed non-parties. Janssen further requested an opportunity to meet and confer with Mr.
Mutchler regarding the subpoenas. Mr. Mutchler responded by letter dated August 23, 2012.

---

[11] RBC did not include Requests 6-12 in the subpoena to Janssen.

*See* Letter dated August 23, 2012, attached as Exhibit P.  Mr. Mutchler's letter expressed RBC's intent to pursue the subpoenas despite their objectionable nature.

## III.   ARGUMENT

"If a Rule 45 subpoena is served in conjunction with discovery, the deposition testimony or production sought must fall within the scope of proper discovery under Rule 26(b)(1); that is, the sought material must be:  (1) not privileged, (2) relevant to the claim or defense of any party, and (3) either admissible in itself or reasonably calculated to lead to the discovery of admissible evidence. . . ."  9 MOORE'S FEDERAL PRACTICE § 45.03[1] (3d ed. 2012); *see generally Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (addressing Rule 45(c) protections in context of Rule 26(b)(1) scope of discovery).  Further, pursuant to Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure, a court from which a subpoena issues "must quash or modify a subpoena" that (1) "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or (2) "subjects a person to undue burden."  *See also*  Fed. R. Civ. P. 26(c) (providing that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").  A motion to quash a subpoena must be "timely filed" under Rule 45, and "[a]mple authority exists holding that timeliness means within the specified compliance period[.]" *City of St. Petersburg v. Total Containment, Inc.*, No. 07-191, 2008 U.S. Dist. LEXIS 36735 at *5-*6 (E.D. Pa. May 5, 2008).

Here, RBC issued to Pepper Hamilton and Pepper Hamilton attorneys David Richman and Matthew D. Janssen subpoenas in the *Peer v. RBC* TTAB proceedings that request deposition testimony and a legion of documents relating to various issues, including the Arbitration between RBC and SKF that concluded in April 2012.  As the *Peer v. RBC* TTAB proceedings have been suspended at RBC's request, RBC is procedurally precluded from taking

discovery in those proceedings at this time.  *See* Trademark Trial and Appeal Board Manual of

Procedure § 403.01 (3d ed., Revision 1, June 2012) ("The traditional discovery devices, namely,

discovery depositions, interrogatories, requests for production of documents and things, and

requests for admission, are available for use *only during the discovery period*.") (emphasis

supplied).  Further, since RBC has already filed in the *Peer v. RBC* TTAB proceedings papers

that the TTAB is treating as a motion for summary judgment, it is evident that the discovery

record in those proceedings is complete enough to support RBC's case-dispositive motion, and

that additional discovery is at best premature and at worst entirely unnecessary.  As such, this

Court should quash RBC's subpoenas on the grounds that RBC issued them in violation of the

TTAB discovery rules and at a point when additional discovery in the *Peer v. RBC* TTAB

proceedings would be superfluous.

   Even if RBC had the right at this time to issue subpoenas in connection with the

*Peer v. RBC* TTAB proceedings, this Court should quash the subpoenas that RBC issued to

Pepper Hamilton and attorneys Richman and Janssen as they are defective, seek testimony from

counsel currently representing RBC's litigation opponent, seek duplicative discovery and

disclosure of privileged materials, impose undue burden upon the subpoenaed non-parties, and

seek wholly irrelevant materials.  And, since RBC has not issued its subpoenas for any legitimate

discovery purpose, but instead has issued the subpoenas with the apparent motive of harassing

and oppressing the entity and counsel that have recently defeated RBC in a series of litigations,

this Court should sanction RBC for its abuse of the subpoena process.

**A.**     **This Court should quash RBC's subpoenas to the extent that they require deposition testimony.**

**1.**     **The subpoena *ad testificandum* to Pepper Hamilton is defective in that it fails to set forth topics of inquiry.**

Rule 30(b)(6) makes clear that if a party issues a subpoena for deposition testimony to a partnership, the party issuing the subpoena "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Without providing the subpoenaed entity with a topic or topics of inquiry to be addressed at the deposition, the entity cannot identify the person or persons most knowledgeable to be produced for deposition, and also cannot determine the grounds on which the subpoena might be objectionable.

Here, RBC issued to Pepper Hamilton, a Pennsylvania limited liability partnership, a subpoena which requires that it appear for deposition. The subpoena, however, does not set forth in any way the matters for examination, much less describe them with "reasonable particularity," as required by Rule 30(b)(6). Accordingly, as the subpoena *ad testificandum* to Pepper Hamilton is facially defective under the Rules, this Court should quash it.

**2.**     **RBC's subpoenas requesting deposition testimony from attorneys Richman and Janssen should be quashed since the attorneys are currently representing SKF in litigations against RBC.**

The "general rule" is that "the deposition of counsel to an adversary is disfavored." *In re Plastics Additives Antitrust Litigation*, No. 03-2038, 2005 U.S. Dist. LEXIS 47979 at *17 (E.D. Pa. Aug. 9, 2005) (citing cases). In *In re Plastics Additives Antitrust Litigation*, this Court held that depositions of opposing counsel should proceed "only in limited circumstances," and that several factors should be considered when determining whether a deposition of opposing counsel is appropriate, including (1) whether additional means exist to obtain the desired information; (2) the risk of impeding upon privilege and work-product

-15-

protections through the deposition process; (3) the vitality of the desired information to the parties; (4) the extent of discovery already conducted; and (5) the degree to which the deposition undermines the adversarial process.  2005 U.S. Dist. LEXIS 47979 at *17-*18 (citing *In re: Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 (2nd Cir. 2003)).

   Here, RBC has subpoenaed for deposition attorneys David Richman and Matthew D. Janssen.  While Richman and Janssen are not counsel for the entity currently opposing RBC in the *Peer v. RBC* TTAB proceedings regarding RBC's efforts to register Series terms as trademarks, they are counsel to SKF in a number of cases that SKF is currently litigating against RBC, and served as counsel for SKF in the Arbitration and SKF's TTAB proceedings in which SKF was adverse to RBC and aligned with Peer.  As such, they should be treated as "opposing counsel" for purposes of determining whether their depositions are appropriate under the factors set forth in *In re Plastics Additives Antitrust Litigation*.  And since those factors suggest that depositions of Richman and Janssen would be inappropriate, this Court should quash the subpoenas to the extent that they require Richman and Janssen to appear for deposition.

  **a.**  **Factors 1 and 3 – The information sought by RBC is unnecessary and additional sources can provide it.**

   RBC has not articulated in its subpoenas the topics into which it will inquire at the depositions of attorneys Richman and Janssen.  But, based upon the document demands attached to the subpoenas, RBC evidently seeks to depose them regarding facts placed at issue in the Arbitration, including facts relating to SKF's control and ownership of Peer.  *First*, since the Panel has already held that SKF's relationship to Peer does not warrant injunctive relief requiring extinguishment of Peer's TTAB proceedings, RBC has no grounds for continuing to pursue discovery into the issue of SKF's corporate relationship with its subsidiary.

-16-

*Second*, even if it were appropriate for RBC to pursue at this time duplicative discovery regarding the control that SKF exerts over its subsidiary, that discovery should not come from SKF's attorneys, whose only knowledge of SKF's corporate relationship with Peer derives from their representation of SKF in the Arbitration. Rather, if RBC wants discovery regarding SKF's relationship with Peer, RBC should obtain that information from Peer, its adversary in the *Peer v. RBC* TTAB proceedings, as it is Peer that has first-hand knowledge of its relationship with its corporate parent.

### b.   Factor 2 – Depositions of Attorneys Richman and Janssen will impede upon privilege and work-product protections.

Attorneys Richman and Janssen represented SKF in the Arbitration instituted by RBC, and currently represent SKF in appeals relating to the *RBC v. SKF* Connecticut state case and the *RBC v. SKF* Connecticut federal case that concerned, in part, SKF's alleged infringement of RBC's common law trademark rights in Nice "Series" terms. Moreover, Attorney Richman represented SKF in SKF's TTAB opposition proceedings regarding RBC's efforts to register "Series" terms as trademarks, and currently serves as lead litigation counsel for SKF in two Pennsylvania state lawsuits pending in Montgomery County in which SKF is suing RBC for conversion of assets and breach of a commercial lease (case numbers 08-25773 and 07-24405, respectively).

Given these representations, attorneys Richman and Janssen possess confidential information regarding the strategies by which SKF seeks to defeat RBC in a number of ongoing litigation matters and those that it employed to defeat RBC in prior matters. Should they be deposed by RBC's counsel, there is a risk that such privileged strategies could be disclosed. There is also a risk that attorneys Richman and Janssen could disclose facts that SKF personnel confidentially provided to them solely for purposes of obtaining legal advice in the ongoing

lawsuits and those that are now concluded, including facts relating to the "Series" terms and

SKF's use of them while it owned and after it sold the Nice business.  Accordingly, to avoid

disclosure of privileged information possessed by attorneys Richman and Janssen, this Court

should order that attorneys Richman and Janssen need not appear for their depositions as

required by the subpoenas.  *See generally In re Plastics Additives Antitrust Litigation*, 2005 U.S.

Dist. LEXIS 47979 at *19 (holding that the "concerns that underlie the policy against permitting

the deposition of *opposing* trial counsel – uncovering litigation strategy and undermining the

adversarial process – are strongly implicated by defendant's decision to subpoena [] litigation

counsel for a corporation both with interests adverse to those of defendant in the instant case and

that is actively involved in corollary antitrust litigation") (emphasis in original).

> **c.**    **Factor 4 – Given RBC's filing of a dispositive motion in the TTAB proceedings, the discovery record in those proceedings is evidently complete.**

On April 27, 2012, RBC filed in the *Peer v. RBC* TTAB proceedings papers that

the TTAB is treating as a motion for summary judgment.  *See* Order dated July 5, 2012, attached

as Exhibit K.  As such, it is evident that the discovery record in those proceedings is complete

enough to support RBC's case-dispositive motion and that further discovery pursuant to the

subpoenas *ad testificandum* to attorneys Richman and Janssen is unnecessary at this time.

> **d.**    **Factor 5 – Depositions of attorneys Richman and Janssen will undermine the adversarial process.**

The document demands set forth in RBC's subpoenas further suggest that at the

depositions of attorneys Richman and Janssen, RBC will seek to inquire into privileged

communications that attorneys Richman and Janssen had with Peer's counsel regarding Peer's

opposition proceedings against RBC in the TTAB.  As such communications are privileged and

disclosure to RBC's counsel of Peer's strategy for defeating RBC would undermine the

adversarial process, this Court should hold that attorneys Richman and Janssen need not appear

for deposition pursuant to RBC's subpoenas *ad testificandum*.  *See generally* N.T. (11/23/2010)

at 228-236, attached as Exhibit G (the Panel holding that the "common interest privilege applies"

to communications between counsel for Peer and counsel for SKF "which involved strategy as to

how to oppose RBC"); *see also The Glidden Company v. Jandernoa*, 173 F.R.D. 459, 472-73

(W.D. Mich. 1997) ("The universal rule of law, expressed in a variety of contexts, is that the

parent and subsidiary share a community of interest, such that the parent (as well as the

subsidiary) is the 'client' for purposes of the attorney-client privilege.").

**B.**   **This Court should quash RBC's subpoenas to the extent that they require production of documents.**

Rule 45(c)(3)(A) requires that a court from which a subpoena issues must quash

or modify a subpoena that requires disclosure of privileged matter or "subjects a person to undue

burden."  Whether a subpoena *duces tecum* imposes an "undue burden" depends upon "such

factors as relevance, the need of the party for the documents, the breadth of the document

request, the time period covered by it, the particularity with which the documents are described

and the burden imposed."  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y.

1996) (quotation omitted).  These factors are neither mandatory nor exclusive, and undue burden

can be found when a subpoena is facially overbroad.  *See, e.g., Semtek Int'l, Inc. v. Merkuriy

Ltd.*, No. 3607, 1996 U.S. Dist. LEXIS 22444 at *8-*9 (N.D.N.Y. May 1, 1996); *see also* 9

MOORE'S FEDERAL PRACTICE § 45.32 (3d ed. 2012) ("[W]hen a subpoena is overbroad on its

face, the court will quash or modify the subpoena.").

RBC's requests for production to Pepper Hamilton and attorneys Richman and

Janssen require production of privileged materials and impose an undue burden for various

reasons.  As such, the subpoenas *duces tecum* should be quashed.

-19-

1. **Request 1 of RBC's subpoenas seeks duplicative production and privileged documents, including documents that the Panel has already held are privileged and not subject to production.**

By Request 1 of the subpoenas to Pepper Hamilton and attorneys Richman and Janssen, RBC seeks production of "[a]ll correspondence between [SKF, Pepper Hamilton, Attorney Richman, and Attorney Janssen] and any person acting for[,] on behalf of[,] or for the benefit of Peer, regarding any of Peer's Consolidated Oppositions and/or any opposition pending at any time before the USPTO or litigation matter involving [RBC]."  Since this request seeks production of documents that RBC has already obtained in the Arbitration, are protected from disclosure by the common-interest or community-of-interest privilege, and are irrelevant to the *Peer v. RBC* TTAB proceedings, this Court should strike the request.

As explained above, RBC made substantially the same demand for documents in the Arbitration. *See* Letter dated October 29, 2009 at Requests 2-4, attached as Exhibit D.  That request prompted SKF, on September 17, 2010, to (1) produce non-privileged, responsive documents generated on or before the date of production, (2) object to the demand on the grounds that it sought documents containing communications between counsel for SKF and Peer regarding litigation matters regarding RBC's efforts to arrogate trademark rights in Series terms that are protected from disclosure by the attorney-client privilege, the common-interest or community-of-interest privilege, and the work product doctrine, and (3) withhold from production 142 documents on these grounds. *See* Letter dated September 17, 2010, attached as Exhibit E.

RBC moved the Panel to compel production of the documents that SKF listed on its privilege log, and the Panel granted RBC's motion in part and denied it in part. *See* N.T. (11/23/2010) at 228-236, attached as Exhibit G.  Specifically, the Panel, after reviewing RBC's motion and entertaining oral argument from the parties, held that (1) a number of the documents

contained on the privilege log were non-substantive, inconsequential communications between counsel for SKF and Peer that need not be produced, (2) the common-interest privilege protected from disclosure "a large group of [] communications [] between counsel for Peer and counsel for SKF, which involved strategy as to how to oppose RBC," (*id.*), and (3) two documents were not privileged and were subject to production.  The two documents were subsequently produced in compliance with the Panel's order.  Accordingly, as RBC has already obtained in the Arbitration pre-September 17, 2010, non-privileged documents containing communications between SKF/SKF's counsel and Peer/Peer's counsel regarding litigation matters relating to RBC's efforts to arrogate trademark rights in Series terms, Request 1 of RBC's subpoenas requires production of discovery duplicative of that already produced in the Arbitration.  As such a request is wholly unnecessary and unduly burdensome on the subpoenaed non-parties, Request 1 should be stricken.  *See generally In re Plastics Additives Antitrust Litigation*, No. 03-2038, 2005 U.S. Dist. LEXIS 47979 at *13 (E.D. Pa. Aug. 9, 2005) (holding that request for production was unduly burdensome since the request "duplicate[d] previous requests and because the desired documentation [was] obtainable from a more convenient source").

Further, RBC is collaterally estopped from seeking to upset the Panel's decision regarding application of the common-interest privilege to the pre-September 17, 2010 documents requested by RBC.  As explained by the Third Circuit in *Witnowski v. Welch*, the doctrine of collateral estoppel "prevents parties from litigating again the same issues when a court of competent jurisdiction [or an arbitration panel] has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties[.]"  173 F.3d 192, 198-200 (3d Cir. 1999) ("Under Pennsylvania law, arbitration proceedings and their findings are considered final judgments for the purposes of collateral estoppel.").  Accordingly, since RBC has already had a

full and fair opportunity to litigate the issue of the applicability of the common-interest privilege

to communications between SKF and its counsel and Peer and its counsel regarding litigation

matters against RBC, and since the Panel has already decided that issue against RBC in the

Arbitration that has proceeded to final judgment, RBC is precluded from relitigating the issue

here. *See id.*

Finally, RBC is not entitled to production of documents containing

communications between SKF/SKF's counsel and Peer/Peer's counsel that postdate SKF's

September 17, 2010, production of documents in the Arbitration. *First*, such documents bear no

relevance to the *Peer v. RBC* TTAB proceedings, which concern, *inter alia*, the issue of whether

RBC/Nice has made substantially exclusive use of Series terms such that those terms can serve

as source indicators and RBC/Nice can claim exclusive trademark rights in them. *Second*, even

if communications between counsel for SKF and Peer were somehow relevant to the merits of

Peer's oppositions, the common-interest or community-of-interest privilege would protect from

disclosure communications between them that concern confidential legal strategy, advice, and

attorney-client communications since SKF and Peer, as parent and subsidiary, share a "complete

community of interest." *The Glidden Company v. Jandernoa*, 173 F.R.D. 459, 472-73 (W.D.

Mich. 1997); *see generally In re: Teleglobe Comms. Corp.*, 493 F.3d 345, 364-65 (3d Cir. 2007)

(noting that "the community-of-interest privilege allows attorneys representing different clients

with similar legal interests to share information without having to disclose it to others").

### 2.    RBC's subpoenas will impose an undue burden since Requests 6-9 are completely unbounded in scope.

By Requests 6 through 9 of the subpoenas to Pepper Hamilton and Richman, RBC

requests production of "[a]ll documents." *See* Subpoenas, attached as Exhibits N.  While the

requests identify categories of documents that fall within the scope of RBC's request for "[a]ll

documents," they do not contain any language that limits RBC's completely unbounded requests for production. Accordingly, as worded, these requests seek any and all documents in the possession of Pepper Hamilton and Attorney Richman regardless of their relevance to the *Peer v. RBC* TTAB proceedings, and indeed extend to all documents relating to (1) all cases, transactions, and other matters that Pepper Hamilton attorneys have worked on throughout the firm's 122-year history and (2) all of Attorney Richman's professional and personal documents. Such requests cannot be complied with and must be stricken as imposing undue burden on the subpoenaed non-parties.[12] *See, e.g., Semtek Int'l*, 1996 U.S. Dist. LEXIS 22444 at *8-*9 (denying motion to compel compliance with subpoena that was "overbroad on its face" in that the requests were "unlimited in time and thus require[d] production of documents for an extended period"); *see generally Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-42 (1st Cir. 2003) ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs[.]") (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).

### 3.   RBC's subpoenas impose an undue burden since Requests 2-4 and 10 require reproduction of documents in RBC's possession.

As for Requests 2, 3, 4, and 10, they seek production of all Arbitration-related documents, including documents that SKF previously produced to RBC in the Arbitration and vice versa. Accordingly, as these Requests require Pepper Hamilton and attorneys Richman and Janssen to duplicate discovery efforts that they undertook in the Arbitration on behalf of SKF, the Requests present an undue burden and must therefore be stricken. *See In re Plastics Additives Antitrust Litigation*, No. 03-2038, 2005 U.S. Dist. LEXIS 47979 at *13 (E.D. Pa. Aug.

---

[12] To the extent that Requests 6 through 9 seek production of communications and correspondence between (1) Peer and its counsel and (2) SKF and its counsel, such requests are duplicative of Request 1 and are objectionable for the same reasons that Request 1 is objectionable. *See* Section III.B.1., *supra*.

9, 2005) (holding that request for production was unduly burdensome since the request "duplicate[d] previous requests and because the desired documentation [was] obtainable from a more convenient source"); 9 MOORE'S FEDERAL PRACTICE § 45.32 (3d ed. 2012) ("If the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty witness will often create an undue burden.").

For example, by Request 10, RBC requests production of "[a]ll documents relating to the Arbitration, including but not limited to documents relating to hearing transcripts, e-mails, discovery, Arbitration Panel Orders, and communicators [*sic*] with the Arbitration Panel or any Arbitration Judge." *See also* Subpoenas at Requests 2, 3 (requesting production of "transcripts of hearings before the Arbitration panel Judges and any orders or decisions issued thereby"). Request 4 seeks "[a]ll documents relating to SKF's control and ownership of Peer, including but not limited to documents relating to Peer's activities and SKF's control and ownership of Peer and/or policies applicable to Peer as an operating business of or subsidiary of SKF or as a member of the SKF group of companies." RBC, as the claimant in the Arbitration, already has in its possession all transcripts, discovery, orders, and correspondence between the parties and the Panel relating to the Arbitration. Further, during the discovery period in the second phase of the Arbitration, RBC issued to SKF forty-two interrogatories, twenty-two document demands, and seventeen requests for admission that all sought information/documents relating to the issue of SKF's control over Peer as its wholly-owned subsidiary, and in response, SKF provided written responses to RBC's discovery requests and over 1,200 pages of responsive materials.[13] *See* SKF's Objections and Responses to RBC's Supplemental Discovery Requests, attached as Exhibit J.

---

[13] To the extent that RBC seeks production of documents regarding the control that SKF exerts over Peer that postdate SKF's production in the Arbitration, such request is unnecessary. The Panel has already held that

What legitimate purpose, it must be asked, is served by subpoenas for information and documents that were previously furnished by movants' client? What is the justification for imposing on movants the burden and expense of collecting and producing anew materials produced to the subpoena-issuer in recent related litigation? Indeed, as RBC's requests request production of materials that are already within its possession and that relate to issues that have already been litigated and cannot be litigated again, it is evident that RBC did not issue Requests 2, 3, 4, and 10 for any valid discovery purpose. Instead, RBC appears to have issued these requests solely for purposes of annoying, harassing, and retaliating against SKF and its counsel for having defeated RBC on various litigation fronts. Such abuse of the subpoena process cannot be countenanced.

Further, Requests 2, 3, 4, and 10, broadly worded as they are, arguably extend to all memoranda, emails, and other documents that attorneys Richman and Janssen prepared and shared with each other, other Pepper Hamilton attorneys and paralegals, and SKF personnel, including SKF General Counsel Timothy D. Gifford, throughout their representation of SKF in the Arbitration. For example, Requests 2 and 3 seek all materials relating to the papers that SKF submitted in the Arbitration regarding the parties' dispute over the applicability of the common-interest privilege to correspondence between SKF and Peer. These Requests therefore seek production of, among other things, all drafts of SKF's brief opposing RBC's motion to compel production of documents withheld under a claim of the common-interest privilege and internal emails relating to same. RBC has no grounds for seeking to invade attorneys Richman's and Janssen's litigation files relating to the Arbitration under the guise of taking discovery in TTAB proceedings that concern the issue of whether certain terms constitute trademarks.

---

SKF's control over Peer does not warrant an order restraining Peer's TTAB oppositions, and that issue cannot be litigated again.

**4.      Requests 5, 11, and 12 of RBC's subpoenas seek documents that are wholly irrelevant to the Peer v. RBC TTAB proceedings.**

Requests 5, 11, and 12 of RBC's subpoenas seek documents relating to the following – payment of legal expenses incurred by SKF in the Arbitration and TTAB opposition proceedings (Request 5); payment for legal services rendered by Pepper Hamilton for Peer (Request 11); and Pepper Hamilton's internal operating policy concerning conflicts of interest (Request 12). The documents sought by these requests bear no relevance to the *Peer v. RBC* TTAB opposition proceedings, which concern the issue of whether RBC is entitled to register Series terms as trademarks. Statements rendered by Pepper Hamilton to SKF or Peer for its professional services and expenses and the firm's conflict of interest policy have no conceivable relationship to the matters at issue in the TTAB opposition proceedings and have no potential to lead to admissible evidence in those proceedings. Accordingly, as the documents sought are not the proper subject of discovery under Federal Rule of Civil Procedure 26(b)(1), this Court should strike Requests 5, 11, and 12. *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-42 (1st Cir. 2003) (affirming district court's order quashing subpoena since the documents sought "are not obviously, and perhaps not even reasonably, calculated to lead to other discoverable materials); 9 MOORE'S FEDERAL PRACTICE §§ 45.03[1], 45.32 (3d ed. 2012) ("If the deposition testimony or production sought by a subpoena is not the proper subject of discovery, the person served with the subpoena may move to quash or modify it on that ground.") (noting that a subpoena may be facially overbroad if it "extends to documents or materials of limited or no relevance in the action").

**C.     This Court should sanction RBC and its counsel for seeking to harass Pepper Hamilton and its attorneys through the issuance of unduly burdensome and wholly unnecessary subpoenas.**

Rule 45(c)(1) of the Federal Rules of Civil Procedure requires that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." It further provides that the "issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." *See generally Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming award of attorney's fees incurred in obtaining quashing of subpoena since the district court was "justified [in] finding that the subpoena was overly burdensome and served for an improper purpose").

Here, RBC's subpoenas to Pepper Hamilton and attorneys Richman and Janssen are patently unreasonable. As explained above, the subpoenas require deposition testimony and document production in TTAB proceedings that have been suspended at RBC's request and after RBC submitted a case-dispositive motion to the TTAB. Further, the subpoenas require production of documents (1) relating to the Arbitration instituted by RBC that are already in RBC's litigation files, (2) that the Panel in the Arbitration has already held are privileged and protected from disclosure, and (3) are irrelevant to the merits of the issues pending in the *Peer v. RBC* TTAB proceedings.

Given that RBC's requests are wholly unnecessary for its current litigation with Peer, it is evident that RBC did not issue its subpoenas for any legitimate discovery purpose. Rather, RBC must have an ulterior motive for serving Pepper Hamilton and attorneys Richman and Janssen with unduly burdensome subpoenas that require deposition testimony and production of myriad documents. Since Richman and Janssen were counsel for SKF in various

litigations in which SKF defeated RBC, the inference is inescapable that the subpoenas are motivated by vindictiveness and/or were issued to annoy and harass SKF for its subsidiary's persistence in opposing RBC's trademark registration applications. If the Court finds, as it should, that RBC and its counsel failed in their duty to take reasonable steps to avoid imposing undue burden or expense on movants, then it is duty-bound to impose sanctions on RBC and its attorneys.[14] They should be required jointly to reimburse Pepper Hamilton and attorneys Richman and Janssen for fees incurred in bringing this motion to quash.

## IV.   CONCLUSION

For the reasons set forth above, this Court should (1) quash the subpoenas *duces tecum* and *ad testificandum* that RBC served on Pepper Hamilton LLP, David Richman, Esq., and Matthew D. Janssen, Esq., and (2) sanction RBC and its counsel for wholly failing to avoid imposition of undue burden and expense on the subpoenaed non-parties and their abuse of the subpoena process.

Respectfully submitted,

Dated:  August 24, 2012

/s/ Matthew D. Janssen
David Richman
Matthew D. Janssen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

*Counsel for Pepper Hamilton LLP,*
*David Richman, and Matthew D. Janssen*

---

[14] "The issuing court *must* enforce this duty and impose an appropriate sanction[.]"  Fed. R. Civ. P. 45(c)(1) (emphasis added).

## CERTIFICATE OF SERVICE

I, Matthew D. Janssen, hereby certify that on this 24th day of August, 2012, a true and correct copy of the foregoing was served via U.S. First Class Mail, postage prepaid, upon the following:

John H. Mutchler, Esq.
Michaud-Kinney Group LLP
306 Industrial Park Road, Suite 206
Middletown, CT 06457-1532

*Counsel for Roller Bearing Company of America, Inc.*

/s/ Matthew D. Janssen
Matthew D. Janssen